IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES FITZPATRICK,

        Plaintiff,

v.                                                         No. CIV 13-13 JAP/RHS

BOARD OF COUNTY COMMISSIONERS
FOR THE COUNTY OF CURRY, d/b/a
CURRY COUNTY DETENTION CENTER,
LANCE PYLE, COUNTY MANAGER,
WARDEN CARLOS ORTIZ, DETENTION
OFFICER LANCE SUNQUIST and
DETENTION OFFICER STEPHEN DICK,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

        DEFENDANTS [sic] LANCE PYLE'S MOTION FOR SUMMARY JUDGMENT NO. I: TO DISMISS LANCE PYLE ON THE BASIS OF QUALIFIED IMMUNITY (Motion for Summary Judgment) (Doc. No. 36) contends that Defendant Lance Pyle is entitled to qualified immunity on Plaintiff James Fitzpatrick's claim that the conditions of his confinement in the Curry County Detention Center (CCDC) violated various provisions of the United States and New Mexico constitutions. Defendant Pyle argues that he bears no personal responsibility for the conditions at CCDC and cannot, therefore, be held liable for any constitutional violation that Plaintiff may have suffered as a result of these conditions. Plaintiff's RESPONSE TO DEFENDANT LANCE PYLE'S MOTION FOR SUMMARY JUDGMENT NO. I: TO DISMISS LANCE PYLE ON THE BASIS OF QUALIFIED IMMUNITY (Response) (Doc. No. 47 at 5) argues, *inter alia*, that summary judgment is inappropriate because Defendant Pyle

"should have know[n] about the lack of policies with regard to the handling of prisoners" at CCDC, which caused Plaintiff harm, but failed to take any steps to remedy the situation.

DEFENDANT LANCE PYLES' REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT NO. I: TO DISMISS LANCE PYLE ON THE BASIS OF QUALIFIED IMMUNITY (Reply) (Doc. No. 49) asserts, in part, that there is no evidence that Defendant Pyle was responsible for policymaking at the CCDC, or, even if he had policymaking authority, there is no evidence that he knew Plaintiff's rights were being violated and was deliberately indifferent to the violation.

After careful review of the pertinent law, pleadings, motions, and exhibits, the Court determines that genuine issues of material fact exist with respect to Defendant Pyle's alleged personal involvement and policymaking authority. Thus, the Court will deny Defendant Pyle's Motion for Summary Judgment based on qualified immunity with respect to individual capacity claims asserted against him in Count I.

## BACKGROUND

Plaintiff brings a two-count COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS AND ASSAULT (Complaint at ¶ 5) (Doc. No. 1), stemming from his detention at the Curry County Adult Detention Center (CCDC), which began on approximately February 3, 2010. In Count I of the Complaint, Plaintiff asserts an Eighth Amendment violation for cruel and unusual punishment against Defendants Board of Curry County Commissioners, Defendant Pyle, and Defendant Warden Carlos Ortiz.[1] According to the Complaint, Plaintiff was placed in a padded holding cell at CCDC for a period of about five months. The holding cell measured 70 to 75 square feet and did not have a toilet or other facilities. Plaintiff alleges that he was kept in this

---

[1] Count II raises allegations of personal injury and excessive or unreasonable force by Defendants Lance Sunquist and Stephen Dick. Defendant Pyle's Motion for Summary Judgment is limited to Count I as the Complaint does not name Mr. Pyle in Count II.

holding cell with up to six other prisoners on numerous occasions. Additionally, during this period, Plaintiff was allowed out for recreation on only one occasion. Plaintiff contends that these conditions constituted cruel and unusual punishment.

Although Plaintiff's Complaint does not specify the capacities in which Plaintiff seeks to hold each Defendant liable, Defendant Pyle assumes Plaintiff is suing him in his individual and official capacities. Motion for Summary Judgment at 2.  However, in this MEMORANDUM OPINION AND ORDER, the Court focuses its inquiry solely on whether Defendant Pyle, as sued in his individual capacity, is entitled to qualified immunity.  An official sued in his official capacity may not take advantage of a qualified immunity defense.  *Mitchell v. Forsyth,* 472 U.S. 511, 556 n. 10 (1985) (citation omitted).

## SUMMARY JUDGMENT AND QUALIFIED IMMUNITY

Rule 56 directs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact is or cannot be genuinely disputed must support such assertion by "citing to particular parts of materials in the record," including affidavits, or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).  In evaluating a request for summary judgment, the Court construes the non-movant's evidence as true, and all justifiable and reasonable inferences are drawn in the non-movant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To defeat summary judgment, the nonmoving party must come forward with more than a showing of the "existence of a scintilla of evidence in support of the plaintiff's position;" "there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*,

477 U.S. at 252.  However, "[a]t the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Randle v. City of Aurora*, 69 F.3d 441, 453 (10th Cir.1995) (citation omitted).

Qualified immunity shields law enforcement officials from liability for harm caused by Reasonable mistakes, "protecting all but the plainly incompetent or those who knowingly violate the law." *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (quotation omitted).  When a defendant raises qualified immunity in a motion for summary judgment, the burden shifts to the plaintiff to show: "(1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (quotation omitted).  If a "plaintiff successfully carries his two-part burden," the "defendant bears the burden, as an ordinary movant for summary judgment, of showing no material issues of fact remain that would defeat the claim of qualified immunity." *Estate of Booker v. Gomez,* 745 F.3d  405, 2014 WL 929157, at *3  (10th Cir. 2014) (citations omitted).

The court has discretion to address either prong of the two-part test first.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In determining whether the plaintiff has met his burden of establishing a clearly established constitutional violation, the Court "will construe the facts in the light most favorable to the plaintiff as the nonmoving party." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (citation omitted).

## ANALYSIS

I.   UNDISPUTED MATERIAL FACTS

The following facts are taken from the briefing and are undisputed unless stated otherwise. During the entirety of Plaintiff's incarceration at CCDC, Defendant Pyle was the

County Manager for Curry County. In the fall of 2009, prior to Plaintiff's incarceration, Defendant Pyle appointed Defendant Carlos Ortiz as the interim administrator at CCDC. Defendant Ortiz remained employed as the interim administrator at the time Plaintiff was booked into CCDC on February 3, 2010. But he resigned shortly thereafter around February 15 or 16, 2010.  During his time as interim administrator, Defendant Ortiz reported to Defendant Pyle, who, in turn reported to the Board of County Commissioners; Defendant Ortiz met with Defendant Pyle "periodically . . . to give him updates on what was happening."

After Defendant Ortiz resigned, responsibility for CCDC temporarily shifted from Defendant Pyle to the Curry County Sheriff, who operated CCDC from about February 20, 2010 to June 2010. The Sheriff did not report to Mr. Pyle. On June 2, 2010, the Board of County Commissioners appointed a new CCDC administrator, who appears to have reported to Defendant Pyle.

While the parties disagree about Defendant Pyle's policymaking role in regard to CCDC conditions, Plaintiff has produced evidence, in the form of the depositions of Defendant Ortiz, Defendant Pyle, and Keith Farkas, a member of the CCDC command staff, that:

- Defendant Ortiz, as administrator, reported to Defendant Pyle before Defendant Ortiz made decisions concerning CCDC;
- Defendant Pyle met regularly with Defendant Ortiz;
- Defendant Ortiz addressed his written recommendations and reports regarding jail matters to Defendant Pyle.  Defendant Pyle would read these recommendations and reports to be informed about what was occurring at the jail;

5

- There was no policy on the size of the cell where prisoners were kept, no policy on how long a person could be kept in a padded cell, and no policy regarding how much recreation an inmate in a padded cell would be permitted; and

- There was no policy or requirement for a toilet, shower, or wash basin facilities for prisoners in CCDC.

Defendant does not present any evidence to contradict these facts.

II.     SUPERVISORY LIABILITY

There is no question that "[c]orrections officials have the responsibility under the Eighth Amendment, and therefore the Fourteenth Amendment, 'to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety.'" *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998). *See also McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) ("Under the Eighth Amendment, jail officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety.").

For the purposes of this motion, Defendant Pyle does not dispute that Plaintiff suffered an Eighth Amendment violation while confined at CCDC. Defendant Pyle's position is that even if there was a clearly established constitutional violation, Defendant Pyle cannot be held liable under a theory of supervisory liability because he was neither responsible for policymaking at CCDC nor personally responsible for day-to-day operations and decision making at the detention center.  Motion for Summary Judgment at 5.  In other words, Defendant Pyle contends that he cannot be held liable solely because of his supervisory position.

It is true that personal participation is necessary to impose individual liability on a supervisor-defendant under 42 U.S.C. § 1983. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). Because "§ 1983 imposes liability for a defendant's own actions[,] personal participation in the specific constitutional violation complained of is essential." *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011).

In *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011), the Tenth Circuit Court explained that a defendant sued in his individual capacity could be held liable under § 1983 based on personal liability or supervisory liability. However, an official cannot be held liable merely because of a supervisory position. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996). To hold a defendant liable as a supervisor, the plaintiff must show an "affirmative link" between the supervisor and the alleged constitutional violation. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010), *cert. denied,* __ U.S. __, 131 S.Ct. 2150 (2011).

In examining the question of supervisory liability, the Tenth Circuit Court provided the following guidance:

> Personal liability "under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Supervisory liability "allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, [or] implements . . . a policy . . . which subjects, or causes to be subjected that plaintiff to the deprivation of any rights . . . secured by the Constitution." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, __ U.S. __, 131 S.Ct. 2150 (2011) (quotation omitted).
>
> . . . to establish supervisory liability, a plaintiff must show that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199.

*Brown*, 662 F.3d. at 1163-64.

III.     DISCUSSION

In his deposition, Defendant Pyle testified that he met regularly with administrators and interim administrators, including Defendant Ortiz, who reported to him. Defendant Pyle stated that he walked through the jail, observed the padded cells, and agreed that they were "pretty confined." Response, Pyle Dep. at 20-21. Defendant Pyle disclaimed any knowledge as to how long inmates might be kept in holding cells, explaining that the detention center administrator(s) or staff would have to answer that question. *Id.* at 21. Defendant Pyle also did not know if a policy existed to address how long an inmate could be kept in a padded cell. *Id.* at 22. According to Defendant Pyle, "a detention administrator that oversees and handles the operations of the facility" would be responsible for those types of issues. *Id.* at 21-22.

With respect to policies concerning how long an inmate may be kept in a holding cell, Defendant Pyle testified that the detention administrator and team prepared those policies, but that the policies were forwarded to the "county attorney *and myself* for review." *Id.* at 22 (emphasis added). From there, the policies were sent to the Board of County Commissioners who approved the policies. *Id.* Defendant Pyle agreed that there should be something in a policy addressing how long an inmate could be held in a padded cell and believed "there's probably something in a policy." *Id.*

Defendant Ortiz, who was the interim administrator at the time Plaintiff was booked into CCDC, testified that he reported to Defendant Pyle before making any decisions concerning inmates at the CCDC. Response, Ortiz Dep. at 11. Defendant Ortiz met with Defendant Pyle "at least once a week" about jail matters and addressed reports about the jail to Defendant Pyle who "read them and [knew] what was going on over there [at the jail]." *Id.* at 35-36, 37.

Plaintiff also attached to his Response a partial transcript of Keith Farkas's deposition testimony. Mr. Farkas was apparently part of the "command staff" at CCDC from May 2010 through at least March 2014. Response, Farkas Dep. at 6-8. Mr. Farkas testified that if there was not a policy on a certain matter related to jail conditions, command staff would deal with it. This meant that the deputy warden and warden would address those concerns and that "it would go – well Mr. Pyle would get it first, then it would go to the county attorney [and] then it would be presented to the Commission for approval." *Id.* at 8-9. Mr. Farkas stated that CCDC did not have a policy on how large the cells were. *Id.* at 9. He believed there was "kind of" a policy on how long a prisoner could be held in a padded cell. *Id.* In responding to the question of whether there was a policy in place in 2010 regarding placement in a padded cell when Plaintiff entered CCDC, Mr. Farkas stated "[t]here was a vague policy." Ultimately, Mr. Farkas testified there was not a policy on how long an inmate could be held in a padded cell. *Id.* at 13.

Mr. Farkas admitted that in 2010 when Plaintiff was housed in the padded cell, there were no toilet, shower, or water facilities in the cell, and that the inmate had to ask to use an outside bathroom. *Id.* at 15. Mr. Farkas further testified that inmates kept in padded cells were not allowed any recreation. *Id.* at 15-16. Mr. Farkas remembered Plaintiff and that he was in a wheelchair, but he did not know why Plaintiff was kept in a padded cell. *Id.* at 17.

Drawing all justifiable and reasonable inferences in favor of Plaintiff, the non-movant, the Court finds that there is sufficient evidence for a reasonable fact-finder to conclude Defendant Pyle was personally involved in the alleged constitutional violations. Defendant Pyle walked through the facility, saw the cells, and was aware of the size of the cells. He received reports and recommendations about the jail operations from interim administrators or wardens at CCDC and was kept up-to-date on jail matters. Defendant Pyle's insistence that he is ignorant

9

about policies at the CCDC and plays no role in policymaking is contradicted by his concession that he reviewed policies for the CCDC before he forwarded them to the Board of County Commissioners.

Furthermore, based on Defendant Pyle's admitted role with respect to policy review at CCDC and based on Defendant Pyle's regular meetings with administrators about jail matters, the Court concludes, in relation to the supervisory liability claim, that Plaintiff raised genuine issues of material fact regarding whether Defendant Pyle was deliberately indifferent to the conditions of Plaintiff's incarceration.

IT IS THEREFORE ORDERED that DEFENDANTS [sic] LANCE PYLE'S MOTION FOR SUMMARY JUDGMENT NO. I: TO DISMISS LANCE PYLE ON THE BASIS OF QUALIFIED IMMUNITY (Doc. No. 36) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE