IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES FITZPATRICK,

        Plaintiff,

v.                                                                                                       No. CIV 13-13 JAP/RHS

BOARD OF COUNTY COMMISSIONERS
FOR THE COUNTY OF CURRY, d/b/a
CURRY COUNTY DETENTION CENTER,
LANCE PYLE, COUNTY MANAGER,
WARDEN CARLOS ORTIZ, DETENTION
OFFICER LANCE SUNQUIST and
DETENTION OFFICER STEPHEN DICK,

        Defendants.

## MEMORANDUM OPINION AND ORDER

In April 2014, the parties filed cross-motions for summary judgment. *See* PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT'S [sic] BOARD OF COUNTY COMMISSIONERS FOR THE COUNTY OF CURRY AND CARLOS ORTIZ ON THE ISSUE OF LIABILITY (Doc. No. 55); DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. II: ON THE BASIS OF QUALIFIED IMMUNITY AND ON OTHER GROUNDS (Doc. No. 57) (Defendants' MSJ). Plaintiff, James Fitzpatrick, asks the Court to grant partial summary judgment in his favor on the basis that the conditions of his confinement in the Curry County Detention Center (CCDC) violated the Eighth Amendment. Defendants, Board of County Commissioners for the County of Curry, Lance Pyle, Carlos Ortiz, and Lance Sundquist[1] (Defendants), contend that the Court must dismiss Plaintiff's Eighth Amendment claim because (1) Plaintiff failed to exhaust all administrative remedies, (2) Plaintiff was not

---

[1] The Court notes that it appears that Defendant Sundquist's name is misspelled in the caption.

harmed by the allegedly crowded, unsanitary, and restrictive conditions in CCDC, and (3) the conditions in CCDC were constitutionally acceptable. Additionally, Defendant Sundquist moved for summary judgment on Plaintiff's Count II excessive force claim.[2]

The Court has carefully reviewed the pertinent law, exhibits, and briefing, including RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS BOARD OF COUNTY COMMISSIONERS FOR THE COUNTY OF CURRY AND CARLOS ORTIZ ON THE ISSUE OF LIABILITY (Doc. No. 63), PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT NO. 2: ON THE BASIS OF QUALIFIED IMMUNITY AND OTHER GROUNDS (Doc. No. 64) (Plaintiff's Response), DEFENDANTS' REPLY TO MOTION FOR SUMMARY JUDGMENT NO. II: ON THE BASIS OF QUALIFIED IMMUNITY AND ON OTHER GROUNDS (Doc. No. 79) (Defendants' Reply). Because Plaintiff failed to exhaust CCDC grievance procedures, his Count I Eighth Amendment claim is barred by the Prison Litigation Reform Act of 1995 (PLRA) and must be dismissed by this Court. Plaintiff's excessive force claim, on the other hand, may proceed. Plaintiff has produced sufficient evidence for a reasonable jury to conclude that Defendant Sundquist used an unreasonable amount of force against Plaintiff on January 8, 2012.

## BACKGROUND

### A. Conditions of Confinement

On February 3, 2010, Plaintiff, James Fitzpatrick, was arrested and booked into the Curry County Detention Center (CCDC). Deposition of James Fitzpatrick, Exhibit A to Defendants' MSJ (Doc. No. 57-1) (Fitzpatrick Deposition) at 77:10-12. For the first three or three-and-a-half months of Plaintiff's confinement, he was held in what he terms a "rubber room," a small padded

---

[2] Plaintiff opposes Defendant Sundquist's motion for summary judgment, but does not cross-move for summary judgment on the excessive force claim.

cell without a toilet or other facilities. *Id.* at 90:4-21. While he was confined in this room, Plaintiff often had to beg to use the restroom or take a shower. *Id.* at 98:17-99:15. At some point, Plaintiff was transferred to a holding cell, where he remained for the next three-and-a-half or four months. *Id.* at 100:21-101:2. The holding cell had a toilet, but not a shower. *Id.* at 101:7-11. Plaintiff shared the holding cell with an average of three or four people, although there were times when up to seven people crowded into the cell. *Id.* at 101:20-102:9. When the cell had more than four occupants, someone had to lie or sit in front of the toilet. *Id.* at 91:15-22. On at least three occasions, inmates urinated on the floor. *Id.* at 113:23-114:6. During this time period, in which Plaintiff was held in the "rubber room" and the holding cell, Plaintiff was only allowed out for exercise once, in the latter part of July. *Id.* at 90:9-10, 107:25-108:6.

### B. Facility Administrators

On February 3, 2010, when Plaintiff was booked into CCDC, Defendant Carlos Ortiz was the Interim Administrator. Interrogatory No. 9, Exhibit E to DEFENDANTS LANCE PYLE'S MOTION FOR SUMMARY JUDGMENT NO. I: TO DISMISS LANCE PYLE ON THE BASIS OF QUALIFIED IMMUNITY (Doc. No. 36-5). Defendant Ortiz resigned on approximately February 21, 2010, at which time responsibility for CCDC transferred to the Curry County Sheriff, Matt Murray. Sheriff Murray appointed Keith Bessette as a temporary administrator and then replaced him with Kirk Roberts on April 1, 2010. On June 2, 2010, the Sheriff relinquished control of CCDC to the Board of Curry County Commissioners, who appointed Keith Norwood as the Facility Administrator.[3] *Id.*

### C. CCDC Grievance Procedures

According to the CCDC inmate handbook, a copy of which was provided to Plaintiff, Fitzpatrick Deposition at 82:5-7, inmates were permitted to file grievances using an "Inmate

---

[3] The parties often refer to the Facility Administrator as the Warden.

Grievance" form. The handbook explains that grievances "are first answered by the appropriate staff at the lowest level in the chain of command." If an inmate disagrees with an answer, the inmate may "send a grievance to the next higher in the chain of command." If the inmate remains unsatisfied, the inmate may continue to appeal an adverse decision until they "reach the Facility Administrator, who will make the final decision."[4]

Plaintiff testified that he reviewed this portion of the handbook and was familiar with the grievance-appeals procedure. *Id.* at 83:17-19, 87:1-6. As Plaintiff explained, an inmate could appeal a rejected grievance to the warden. *Id.* at 87:4-6. However, Plaintiff never appealed any grievance pertaining to overcrowding, unsanitary conditions, insufficient recreation, or failure to provide adequate access to toilet and shower facilities to the CCDC Facility Administrator. Affidavit of Sheila Morrison, Exhibit D to Defendants' MSJ (Doc. No. 57-4) ¶ 10; Plaintiff's Grievances, Exhibit I to Defendants' Reply (Doc. No. 79-1).

### D. January 8, 2012 Incident

On January 8, 2012, Sergeant Jayson Cloud, the Shift Supervisor, requested CCDC staff to locate all the extra mattresses within CCDC. Affidavit of Jayson Cloud, Exhibit 1 to NOTICE OF ERRATA (Doc. No. 61-1) ¶¶ 4-5. When Sergeant Cloud entered Plaintiff's cell, Plaintiff began yelling at him about the removal of his mattress. *Id.* ¶ 6. After leaving the cell, Sergeant Cloud asked Officer Lance Sundquist to remove Plaintiff from his cell and place him in administrative segregation. *Id.* ¶¶ 7-8.

Shortly thereafter Officer Sundquist entered Plaintiff's cell and told Plaintiff he was going to take him to lockdown. Fitzpatrick Deposition at 178:16-17. After Plaintiff objected vociferously, Officer Stephen Dick joined Officer Sundquist. *Id.* at 178:17-179:8. Plaintiff, who was sitting on the bed, once against refused to leave. *Id.* at 179:12-13. Officers Sundquist and

---

[4] A copy of the CCDC grievance procedure is attached to Fitzpatrick's Deposition (Doc. No. 57-1) at 18.

Dick then approached Plaintiff, grabbed him, and jerked him straight up into the upper bunk. *Id.* at 179:13-17. Officer Sundquist continued to hold Plaintiff while Officer Dick spun him around, slammed him headfirst into the wall, placed his knee on Plaintiff's back, and used his hand to slam Plaintiff's head into the wall. *Id.* at 179:22-180:1. The Officers then handcuffed Plaintiff and shoved him towards his wheelchair, which was sitting three or four feet away without the brakes engaged. *Id.* at 180:2-5. Plaintiff struck the wheelchair, bounced off, and landed on his right side on the floor. *Id.* at 180:5-7. Officers Sundquist and Dick lifted Plaintiff off the floor, placed him in the wheelchair, and removed him from the cell. *Id.* at 180:8-11. Plaintiff asked to see a doctor because his ear was bleeding. *Id.* at 180:12-13.

### E. Plaintiff's Complaint

On January 8, 2013, Plaintiff filed a two-count complaint in this Court alleging (1) that the conditions of his confinement between February 2010 and roughly July 2010 were cruel and unusual and (2) that Defendants Sundquist and Dick used excessive force against him on January 8, 2012. *See* COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS AND ASSAULT (Doc. No. 1). Plaintiff brought his first claim under 42 U.S.C. § 1983 and his second claim under the New Mexico Tort Claims Act. *Id.*

## DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), a party may receive summary judgment if that party "shows that there is no genuine dispute as to any material fact and [the party] is entitled to judgment as a matter of law." When both parties move for summary judgment, the court must analyze each motion individually and on its own merits. *See Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) (explaining that "[c]ross-motions for summary

judgment are to be treated separately; the denial of one does not require the grant of another.")."Cross-motions for summary judgments, however, do authorize a court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties." *Brubach v. City of Albuquerque*, 893 F. Supp. 2d 1216, 1223 (D.N.M. 2012) (citing *Buell Cabinet Co.*, 608 F.2d at 433; *Harrison W. Corp. v. Gulf Oil Co.*, 662 F.2d 690, 692 (10th Cir. 1981)). "Where the facts are not in dispute . . . , summary disposition is appropriate." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (citing FED. R. CIV. P. 56(c)).

### B. Administrative Exhaustion

Under the PLRA, a prisoner must exhaust administrative remedies, including internal grievance procedures, before filing a § 1983 action with respect to jail conditions. 42 U.S.C. § 1997e (a); *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). "An inmate who begins the grievance process but does not complete it . . . [has] fail[ed] to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). "[S]ubstantial compliance is insufficient." *Fields*, 551 F.3d at 1112. This is true even "where the 'available' remedies would appear to be futile at providing the kind of remedy sought," because the prisoner seeks monetary damages. *Jernigan*, 304 F.3d at 1032 (citing *Booth v. Churner*, 532 U.S. 731, 740 (2001)).

Here, Defendants have produced evidence that Plaintiff knew about CCDC grievance procedures, which permitted prisoners to appeal grievance decisions to the Facility Administrator, but, nonetheless, failed to pursue an appeal of any of his grievances to the Facility Administrator. While Plaintiff denies this fact and contends that he addressed grievances to

6

CCDC administration, he does not cite to any admissible evidence in the record to support this fact. Plaintiff's Response at 6.

After carefully reviewing the record, the Court finds that there is no genuine issue of material fact concerning Plaintiff's failure to appeal any grievance to the Facility Administrator. Between February 3, 2010 and August 4, 2010, Plaintiff filed seventeen official grievance requests, only five of which pertain to the subject matter of this lawsuit: (1) Plaintiff's May 13, 2010 complaint concerning overcrowding and cleaning, (2) Plaintiff's May 17, 2010 complaint concerning overcrowding, (3) Plaintiff's May 26, 2010 complaint concerning overcrowding, (4) Plaintiff's May 19, 2010 complaint about recreation, and (5) Plaintiff's July 19, 2010 complaint about his placement in lockdown and his lack of outside recreation. Plaintiff's Grievances, Exhibit I to Defendants' Reply (Doc. No. 79-1) at 7, 9, 10, 13, 19. Plaintiff did not appeal any of these grievances to the CCDC Facility Administrator.[5] *Id.* Furthermore, there is no evidence in the record to support a finding that Plaintiff filed any grievance at all about his lack of access to toilet and shower facilities. Because Plaintiff failed to exhaust the CCDC grievance procedure, the Court will dismiss Plaintiff's Count I claim without prejudice.[6]

**C. Battery**

In Count II of the Complaint, Plaintiff asserts a claim for excessive force, *i.e.* battery, under the New Mexico Tort Claims Act. A claim for battery arises when one individual intentionally and unlawfully causes a harmful or offensive contact with the person of another. *St.*

---

[5] As Plaintiff points out, he addressed the May 19, 2010 grievance, which was not marked as an appeal, to the CCDC warden. However, CCDC procedure mandates that grievances will first be answered by "the appropriate staff at the lowest level in the chain of command." Plaintiff's May 19, 2010 grievance was signed and addressed by Captain Farkas, a member of CCDC command staff. Plaintiff could have appealed Captain Farkas's response to the Facility Administrator, but chose not to do so.

[6] Plaintiff faults Defendants for failing to cite to the PLRA in the answer. However, Plaintiff acknowledges that Defendants raised Plaintiff's failure to exhaust administrative remedies as an affirmative defense. Plaintiff's Response at 9-10.

7

*John v. McColley*, 653 F. Supp. 2d 1155, 1165 (D.N.M. 2009) (citing *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1209 (10th Cir. 2006)); N.M. Stat. Ann. § 30-3-4. Here, Plaintiff recognizes that Defendant Sundquist, a law enforcement officer, was, as a general matter, privileged to use force against inmates at CCDC. But Plaintiff contends that the force Defendant Sundquist used against him was unlawful because it was unnecessary to preserve the peace.

In New Mexico, the lawfulness of an officer's actions depends on whether the officer was "exercising reasonable and necessary force, or unreasonable, and therefore, excessive force." *State v. Ellis*, 144 N.M. 253, 259 (2008); *see also Reynaga v. County of Bernalillo*, No. 94-2182, 1995 U.S. App. LEXIS 24230, at *4 (10th Cir. Aug. 25, 1995) ("[A] law enforcement officer is not civilly liable for using such force as may reasonably be necessary in the enforcement of law and the preservation of order.") (internal citations omitted). When a law enforcement officer acts in good faith, by making a reasonable determination about the amount of force necessary in a particular situation, "the courts will afford them the utmost protection." *Mead v. O'Connor*, 66 N.M. 170, 173 (1959). In general, the reasonableness of a particular use of force is a question for the jury. *Id.*; *St. John*, 653 F. Supp. 2d 1155 ("[A] jury must determine whether Defendants [law enforcement officials] are protected by having acted reasonably and in good faith.").[7]

For the most part, the facts of this case are undisputed. After Plaintiff and other CCDC officials had a heated argument about the removal of Plaintiff's mattress, Defendant Sundquist entered Plaintiff's holding cell in order to take Plaintiff to lockdown. Plaintiff, who was sitting on the bed, refused multiple requests to cooperate or get off the bed. At this point, Defendant

---

[7] The Court acknowledges that the cases cited in this paragraph involve the use of force against an arrestee or member of the general public. However, the parties appear to agree that the same standard applies in this case even though Plaintiff was a pretrial detainee. The Court notes that claims of excessive force brought by pretrial detainees under the federal constitution are evaluated by considering "(1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the state actor." *Walton v. Gomez*, 745 F.3d 405 (10th Cir. 2014).

Sundquist and Defendant Dick grabbed Plaintiff by the arms and lifted him off the bed in such a way that his head hit the upper bunk. While Defendant Sundquist held Plaintiff's right arm, Defendant Dick proceeded to spin Plaintiff around and slam him headfirst into the wall. Then, both Defendants held Plaintiff as Defendant Dick used his hand to continue to slam Plaintiff's head into the wall. Next, Defendants handcuffed Plaintiff and threw him towards his wheelchair, three or four feet away, whose brakes were not locked. Plaintiff landed on the floor on his right side. Afterwards, Plaintiff complained of bleeding in his ears.

Based on these facts, a reasonable jury could conclude the amount of force used by Defendant Sundquist was unreasonable. While Plaintiff was uncooperative, he was not violent and there is no evidence that he struggled when Defendants attempted to remove him from the bed. Nonetheless, Defendant Sundquist assisted Defendant Dick as he slammed Plaintiff head into the wall multiple times. Additionally, Defendant Sundquist and Defendant Dick threw Plaintiff, a 65-year-old disabled man, towards his wheelchair so that Plaintiff hit the chair and bounced off and landed on the floor. It would not be irrational for a juror to find that Defendant Sundquist lacked a good faith basis for believing this conduct was lawful. Because the Court determines that there are genuine issues of material fact as to the Count II excessive force claim, the Court will not dismiss this claim.

IT IS THEREFORE ORDERED THAT:

1. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT'S [sic] BOARD OF COUNTY COMMISSIONERS FOR THE COUNTY OF CURRY AND CARLOS ORTIZ ON THE ISSUE OF LIABILITY (Doc. No. 55) is denied.

2.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. II: ON THE BASIS OF QUALIFIED IMMUNITY AND ON OTHER GROUNDS (Doc. No. 57) is granted in part and denied in part.

3.  The Court will dismiss Plaintiff's Count I jail-conditions claim without prejudice.

4.  Plaintiff's Count II excessive force claim will proceed.

_____
SENIOR UNITED STATES DISTRICT JUDGE